**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN FLYNN, *et al.*

                  Plaintiffs,

           v.

PULASKI CONSTRUCTION CO., INC. ,
*et al.*

                  Defendants.

Civil Action
No. 02-02336

<u>**MEMORANDUM OPINION AND ORDER**</u>

      Defendants, Pulaski Construction Co., Inc., Central Jersey Excavating Co., L.L.C., and Richard A. Pulaski Construction Co.,Inc., move to vacate a May 8, 2003 entry of default against them. Defendants claim that there is good cause to set aside the entry of default, due to insufficient service of process. Defendants further move to dismiss this action claiming a lack of personal jurisdiction due to insufficient service of process, and a failure to state a claim upon which relief can be granted. For the following reasons, the Court partially **GRANTS** Defendants' motion to vacate the entry of default as to two of the Defendants, Central Jersey Excavating Co., L.L.C. and Richard A. Pulaski Construction Co., Inc.,  but **DENIES** Defendants' motion to vacate

the entry of default as to Pulaski Construction Company.  The Court also **DENIES** Defendants' motion to dismiss Plaintiffs' claim for insufficiency of service of process and failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

Plaintiffs, John Flynn, <u>et al.</u>, brought suit to enforce the terms of a collective bargaining agreement entered into between Defendant Pulaski Construction Co., Inc. and the International Union of Bricklayers and Allied Craftworkers under the provisions of Section 515 Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1145, Pls.' Compl. at ¶ 1 ("Complaint"), which required that Pulaski Construction Co., Inc. contribute on behalf of its employees to a pension fund, Pls.' Opp'n Mem. 2 ("Pls.' Mem."); Decl. of Ira Mitzner Supp. Opp. Mot. Vacate Order of Default, Pls.' Exh. A, at ¶ 2 (June 5, 2003) ("Mitzner Decl."); Defs.' Mem. at 7.  Plaintiffs allege that in 2002, an audit of Pulaski Construction Company disclosed $90,603.40 in delinquencies in contributions to the fund over the period from April 1999 to June 2002. Pls.' Opp'n Mem. at 2; Mitzner Decl. at ¶ 3.

On October 9, 2002, counsel for Plaintiffs, Ira R. Mitzner ("Mitzner"), sent a demand letter to Pulaski Construction Co., Inc., Central Jersey Excavating Co., L.L.C., and Richard A. Pulaski Construction Co., Inc. ("Defendant corporations" or "Defendants"). Pls.' Opp'n Mem. at 3; Mitzner Decl. at ¶ 5; Letter from Paul

Norris, Stark & Stark to Ira Mitzner, Dickstein, Shapiro, Morin & O'Shinsky, LLP, <u>Re: Delinquent Contributions Due the Bricklayer and Trowel Trades International Pension Fund by Central Jersey Excavating</u> (Oct. 25, 2002), Pls.' Exh. 1 ("Oct. 25 Letter from Paul Norris").  Although only Pulaski Construction Co., Inc. is a signatory to the collective bargaining agreement, all three entities operate at the same address and, according to Plaintiffs, engage in similar operations. Pls.' Opp'n Mem. at 2; Mitzner Decl. at ¶ 4.

Sixteen days later, Plaintiffs received a response from Paul Norris ("Norris"), identifying himself as counsel for all of the Defendant corporations and requesting a copy of the audit.  Pls.' Opp'n Mem. at 3;  Mitzner Decl. at ¶ 5; Oct 25 Letter from Paul Norris, Pls.' Exh. 1.  On October 30, 2002, Mitzner sent Norris copies of the audit along with a letter advising that unless full payment was received or the audits were legitimately contested, Plaintiffs would take legal action during the week of November 11, 2002. Pls.' Opp'n Mem. at 3;  Mitzner Decl. at ¶ 5; Letter from Mitzner to Norris, <u>Re: Delinquent Contributions Due the Bricklayers and Trowel Trades International Pension Fund by Central Jersey Excavating, Richard A. Pulaski Construction Company and Pulaski Construction Company</u> (Oct. 30, 2002), Pls.' Exh. 2.   After Defendant corporations failed to reply to this communication, Plaintiffs filed a Complaint on November 25, 2002.  Compl. at 7;

Pls.' Opp'n Mem. at 3;  Mitzner Decl. at ¶ 6.

On December 9, 2002, Charles K. Deeck ("Deeck"), a private process server, served summons and complaint on each of the three Defendant corporations by presenting same to Barbara Pericoloso ("Pericoloso") at the Defendants' common office. Pls.' Opp'n Mem. At 3; Mitzner Decl. at ¶ 7.  According the affidavits of service filed by Deeck, Pericoloso was the "Office Manager who stated she was authorized to receive for [all three] compan[ies] at 2115 Hamilton Avenue, Hamilton, NJ 08619." Aff. of Service Central Jersey Excavating, Pls.' Exh. 3 at 2; Aff. of Service Pulaski Construction Pls.' Exh. 3 at 5; Aff. of Service Richard A. Pulaski Construction Co., Inc., Pls.' Exh. 3 at 8.  Defendants do not contest that Ms. Pericoloso worked for Defendant companies, but rather argue that Ms. Pericoloso is "a secretary/receptionist for the office," Defs.' Mot. at 7,  and that she was "not a director, officer, resident agent, registered agent, person in charge of the office, or person authorized by appointment to receive service of legal process." Id.; Aff. & V.A. of Richard A. Pulaski at  ¶ 14; Aff. & V.A. of Ronald Pulaski at ¶ 11.

Also, the Complaint named Central Jersey Excavating as a Defendant, whereas Defendants aver that the proper name is Central Jersey Excavating Co., L.L.C. Compl. at ¶ 5; Defs.' Mem. P & A. Support Defs.' Mot. Vacate Order Default & Mot. Dismiss at 5 ("Defs.' Mem.").  Likewise, the Complaint named Pulaski

Construction as a Defendant, whereas Defendants aver that the official name is Pulaski Construction Co., Inc.  Compl. at ¶ 5; Defs.' Mem. at 5.

Following the service of the Complaint, Norris telephoned Mitzner on December 31, 2002, requesting additional time to answer the Complaint; Mitzner assented. Pls.' Opp'n Mem. at 4; Letter from Mitzner to Norris, Re: John Flynn, et al. v. Pulaski Construction, et al. Civil Action No. 02:2336 (NHJ) (December 31, 2002), Pls.' Exh. 4. On January 7, Mitzner received a letter from Norris referencing the civil action number, suggesting a settlement with a  payment plan, and the execution of a consent judgment. Pls.' Opp'n Mem. at 4; Mitzner Decl. at ¶ 8; Letter from Norris to Mitzner, Re: John Flynn, et al. v. Pulaski Construction, et al. Civil Action No.: 02:2336(NHJ), (January 7, 2003), Pls.' Exh. 5. Mitzner responded the next day with a counter-proposal. Pls.' Mem. at 4; Mitzner Decl. at ¶ 9.  On February 25, 2003, Mitzner made a final offer and gave Defendants seven days to respond.  Id. Mitzner sent another letter on March 12, 2003 advising that Plaintiffs would wait for a response until March 19 after which time Plaintiffs would move for an entry of default. Id.  On March 21, 2003, Norris sent a letter to Mitzner stating that Defendant corporations had decided to obtain local counsel, and asked for an additional week to respond. Id. at 5. Letter from Norris to Mitzner, Re: John Flynn, et al. v. Pulaski Construction, et al.

Civil Action No.: 02:2336 (NHJ), (March 21, 2003), Pls.' Exh. 8.
("Norris Extension Letter").  After hearing nothing further from
Defendants, Plaintiffs, through Mitzner, moved for entry of default
on April 9, 2003. Pls.' Mem. at 5.

     Default was entered against Defendants on May 8, 2003.  Id.
On May 14, 2003, Mitzner received a telephone call from Brian
Hoffman, identifying himself as Defendant corporations' new counsel
and requesting that Plaintiffs agree to setting aside the default.
Defendants filed a motion to dismiss and vacate default on May 22,
2003.  Defendants move to set aside the entry of default under Fed.
R. Civ. P. 55.  Defendants further move that the Court dismiss the
Plaintiffs' complaint under both Fed. R. Civ. P. 12(b)(2) for lack
of personal jurisdiction; and under Fed. R. Civ. P. 12(b)(6) for
failure to state a claim upon which relief can be granted.


                              **DISCUSSION**

**I.  Standard of Review**

     While default judgments are generally disfavored by courts,
the decision as to whether an entry of default should be vacated is
committed to the sound discretion of the trial court. See Int'l
Painters & Allied Trades & Indus. Pension Fund v. H.W. Ellis
Painting Co., 288 F. Supp. 2d 22, 25-26 (D.D.C. 2003).  Under
Federal Rule of Civil Procedure 55(c), an entry of default may only

be set aside for "good cause."[1]   Good cause exists in two scenarios: (1) where the court that issued the entry of default did not have personal jurisdiction over the defendant and (2) upon a balancing of equities.   Under the latter test, courts specifically weigh the following factors: (a) whether the default was willful, (b) whether setting aside the default will prejudice the opposing party, and (c) whether the Defendant has a meritorious defense to the lawsuit.   See Jackson v. Beech, 636 F. 2d 831, 836 (D.C. Cir. 1980).

When deciding a motion for dismissal under Fed. R. Civ. P. 12(b)(6), the court will dismiss a complaint only if the Plaintiffs can prove no set of facts in support of his claim which would entitle him to relief.   See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).   The Court must construe the complaint in the light most favorable to the Plaintiffs and accept as true all of Plaintiffs' allegations as well as all reasonable inferences that can be drawn from the facts set out in the Complaint. See Kowal v. MCI Commc'ns

---

[1]Fed. R. Civ. P. 55(c) provides:

Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Rule 60(b) provides for relief from a default judgment, as opposed to an entry of default.   The standard to set aside a default judgment is more stringent than is the standard to set aside the entry of default.   See Jackson, 636 F. 2d at 835.

Corp., 16 F. 3d. 1271, 1276 (D.C. Cir. 1994).

**II.  Motion to Vacate**

**A. The District Court had Personal Jurisdiction over the Defendants**

**1. Defendants properly served**

To set aside a default, courts have found that good cause per se exists when default was entered against a party for whom the issuing court did not have personal jurisdiction.  See Combs v. Nick Garin Trucking, 825 F. 2d 437, 442 (D.C. 1987) ("since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied."). Therefore, if service was improper, the default must be set aside.  Id.; see also Marshall v. Labor & Indus., Wash., 89 F. Supp. 2d 4, 11 (D.D.C. 2000) (holding that default is improper when service of process "has not been achieved as to any Defendant.").

The threshold question here, therefore, is whether service of process upon Pericoloso was sufficient to establish jurisdiction over Defendants under the Federal Rules of Civil Procedure.  If service was sufficient, the Court must also assess whether "notice [was] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v.

Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

The Federal Rules of Civil Procedure provide two methods for serving corporations.  First, Rule 4(h)(1) provides that process may be served upon "an officer, a managing or general agent, or . . . any other agent authorized by appointment or by law to receive service of process."  Second, parties may also resort to any method of service permitted by the law of the state where process is served.  Fed. R. Civ. P. 4(e)(1).  In this case, Plaintiffs' method of service satisfies both standards.

### a. Federal Rules of Civil Procedure 4(h)(1) satisfied

The Court must first decide whether Pericoloso was a person authorized to accept service of process for Defendant corporations under Fed. R. Civ. P. 4(h)(1).  As specified by Rule 4(h)(1), service may be achieved on a corporation by receipt of service by "'any . . . [agent] authorized by appointment or by law to receive service of process, and if the agent is one authorized by statute to receive service' so as to effectuate service on the corporation."  Baade v. Price, 175 F.R.D. 403, 404-05 (D.D.C. 1997).  In Van Hoven Co. v. Stans, 319 F. Supp. 180, 182 (D. Minn. 1970), notice was served on a bookkeeper who was neither a corporate officer nor authorized to accept service, who nevertheless told the process server that he was the office manager.  The process server served the employee based on the

server's reasonable belief that the employee was in charge of the office when the officers were not present. Id.  The court further found that the defendant had received actual notice of the lawsuit. Id.  Consequently, the court found service valid holding that "[n]otice is the keystone to proper service under Fed. R. Civ. P. 4(d)(3) and there is no doubt that [the defendant corporation] was adequately informed of the commencement of this action."[2]  Id. Based on this analysis, the court found service on the employee proper.[3]  See also Kuhlik v. Atl. Corp., 112 F.R.D. 146, 148-49 (S.D.N.Y. 1986) (service was sufficient on a receptionist where the receptionist claimed to be competent to accept service because a process server is "entitled to rely on the receptionist's representation of authority").

Therefore, service is sufficient when (a) an agent of the corporation who (b) represents to the process server that she is authorized to receive service is served, and (c) provided that the defendants received actual notice.  It is uncontroverted that (a) Pericoloso was an agent of the Defendants', Defs.' Mot at 7, (b) that she held herself out to be authorized to accept service, Aff.

---

[2]However, courts have found service invalid where the person served had no obligation to deliver the summons promptly to his/her superiors, even when there was actual notice. Baade, 175 F.R.D. at 404.  Baade is distinguishable from the case at bar, because the party served was not actually employed by the defendant, and therefore, no agency relationship existed between the defendant and the person served. See id. at 405.

[3]As of 1993, Fed. R. Civ. P. 4(d)(3) is 4(h)(1).

of Service Central Jersey Excavating, Pls.' Exh. 3 at 2; Aff. of
Service Pulaski Construction Pls.' Exh. 3 at 5; Aff. of Service
Richard A. Pulaski Construction Co., Inc., Pls.' Exh. 3 at 8,  and
(c) that the Defendants' received actual notice, Mitzner Decl. at
¶ 8.

    Although Defendants deny that Pericoloso was an office
manager, or was in any way an agent authorized to accept service,
they do admit that she was in their employ, stating that she was a
receptionist for the corporations. Defs.' Mot. at 7. Furthermore,
as in <u>Van Hoven</u>, there is no question that Defendant corporations
had actual notice of the lawsuit which mitigates any argument that
Defendant corporations were not served properly. <u>Van Hoven</u>, 319 F.
Supp. at 182.  The lawyers for both sides were in communication
with one another both over the telephone and via letters; the
letters themselves referenced the case number of this suit. Dec. 31
Letter from Mitzner to Norris, Pls.' Exh. 4; Jan. 7 Letter from
Norris to Mitner, Pls.' Exh. 5; Feb. 19 Letter from Mitzner to
Norris, Pls.' Exh. 6; Mar. 12 Letter from Mitzner to Norris, Pls.'
Exh. 7; Norris Extension Letter, Pls.' Exh. 8.   Therefore, it
would be disingenuous to argue that service upon Pericoloso was
insufficient to provide notice to the interested parties of the
pending action, as the Defendants' attorney (identified as the
attorney to all three parties) was engaged in communication with
Plaintiffs' attorney, and was himself referencing the lawsuit.

Jan. 7 Letter from Norris to Mitner, Pls.' Exh. 5; Norris Extension
Letter, Pls.' Exh 8.


### b. Service Proper Under New Jersey State Law

Pursuant to Rule 4(e)(1) of the Federal Rules of Civil
Procedure, service may also be effectuated "pursuant to the law of
the state . . . in which service is effected." Fed. R. Civ. Pro.
4(e)(1).  Under the relevant New Jersey statute, process may be
served on a corporation by serving "any officer, director, trustee
or managing or general agent, or any person authorized by
appointment or by law to receive service of process on behalf of
the corporation; or the person at the registered office of the
corporation in charge thereof . . . ." N.J. Rule 4:4-4(a)(6).  The
New Jersey Supreme Court interpreted this provision to require
"that the representative [served] should be so integrated with the
organization that he [or she] will know what to do with the papers
and that he or she should stand in a position as to render it fair,
reasonable, and just to imply the authority to receive service."
O'Connor v. Atlus, 335 A. 2d 545, 556 (N.J. 1975); See also Trs. of
the Local 478 Trucking & Allied Indus. Pension Fund v. Baron
Holding Corp., 540 A. 2d 1307, 1310 (N.J. 1988); Davis v.
DND/Fidoreo, Inc., 721 A. 2d 312, 315 (N.J. 1998); Shannon v.
Academy Lines, Inc., 787 A. 2d 252, 255 (N.J. 2001).

In O'Connor, the court held that "the service of process

herein on the receptionist of the managing agent met the criteria of <u>Mullane</u>, . . . and was sufficient under our R. 4:4-4(d)(2)"[4] because she "was sufficiently integrated with the small organization. . . to know what to do with the papers and it was reasonable for the deputy sheriff to assume she had authority to receive service." <u>O'Connor</u>, 335 A. 2d at 557.   The Supreme Court of New Jersey has found that the subjective (second) prong of this test is met if a receptionist has represented herself as having the authority to accept service, insofar as it is then reasonable for the process server to rely on that statement.   <u>See</u> <u>Baron Holding</u>, 540 A. 2d at 1310 (In applying the <u>O'Connor</u> test to service on a corporation "the deputy did not have 'to imply' [sic] that [the receptionist] had authority to receive service.   The unrebutted proof shows that [the receptionist] represented to the deputy that she was authorized to accept service.").   Furthermore, this case is more even compelling than <u>Baron Holding</u> because here, Pericoloso represented both that she was an office manager, a title implying more power than a receptionist, and that she was authorized to accept service. <u>See</u> <u>id.</u>

---

[4]N.J. R. 4:4-4(d)(2) (now N.J. R. 4:4-4(a)(4)) specifically deals with service upon "individuals doing business in or having an interest in real property."   The test provided in <u>O'Connor</u> was based upon an analysis of cases looking at N.J. R. 4:4-4(d)(3) (now N.J. R. 4:4-4(a)(6) regarding service on a corporation). <u>O'Connor</u> 335 A. 2d at 556. After <u>O'Connor</u>, the test has been used in cases regarding service of process upon a corporation. <u>See, e.g.,</u> <u>Baron</u> <u>Holding</u>, 540 A. 2d at 1310; <u>DND/Fidoreo</u>, 721 A. 2d at 315; <u>Academy</u> <u>Lines, Inc.</u>, 787 A. 2d at 255.

The objective (first prong) has also been met in the case at bar.  As was the case in O'Connor, Pericoloso was sufficiently integrated with Defendant corporations to know what to do with the papers.  This is evidenced by the fact that the proper parties received the notice, namely the attorney for all three Defendants.

### c.  Constitutional Due Process Satisfied

Service here also satisfies due process because Defendants had actual notice of the lawsuit.  The Supreme Court has held that when a defendant has received complete and timely notice of the lawsuit pending against them, that defendant has no due process claim. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1964). Here, that Defendants had actual knowledge of the pending lawsuit is established in the record by the fact that counsel for Defendant corporations contacted Plaintiffs' counsel to request an extension of time to provide an answer, their subsequent letter suggesting a plan for payment, and the following weeks of settlement negotiations.  See, e.g., Dec. 31 Letter from Mitzner to Norris, Pls.' Exh. 4; Jan. 7 Letter from Norris to Mitner, Pls.' Exh. 5; Feb. 19 Letter from Mitzner to Norris, Pls.' Exh. 6; Mar. 12 Letter from Mitzner to Norris, Pls.' Exh. 7; Norris Extension Letter, Pls.' Exh. 8.  Therefore, because Defendants cannot claim a violation of due process, Defendants' service of process claim lacks merit, and the entry of default cannot be vacated on this

ground.


## 2. Defendants properly named

Defendants claim, in the alternative, that service was improper because two of the Defendants were improperly named in the Summons and Complaint.  While it is true that corporate defendants have a right "to be accurately named in process and pleadings of the court," nonetheless this rule does not allow the Defendant to hide behind <u>de minimis</u> or hyper-technical defects in the Complaint. <u>United States v. A.H. Fischer Lumber Co.</u>, 162 F.2d 872, 873 (4th Cir. 1947).  Rather, where the defendant is named such that there is no doubt as to the intended defendant and the defendant is not misled, then service is proper regardless of the error. <u>See</u> <u>id.</u> (finding the extraneous inclusion of "Lumber" and "Inc." as part of Defendant corporation's name was immaterial); <u>see also</u>   <u>Morrel v. Nationwide Mut. Fire Ins. Co.</u>,  188 F.3d 218, 224 (4th Cir. 1999) ("It has long been the rule in this circuit that service of process is not legally defective simply because the complaint misnames the Defendant in some insignificant way."); <u>Open LCR.com, Inc. v. Rates Technology, Inc.</u>, 112 F. Supp. 2d 1223, 1230 (D. Colo. 2000); <u>Brackens v. USA Credit</u>, 2005 U.S. Dist. LEXIS 24851 (D. Kan. 2005) ("the touchstone of the validity of service is the reality of notice, not the form of the corporate name utilized."); 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, <u>FEDERAL PRACTICE AND PROCEDURE</u>  § 1088 (3d

ed. 1998) (in general dismissal is unwarranted unless "the error

actually results in defendant's prejudice or demonstrates a

flagrant disregard of the requirements of [Rule 4]").

Indeed, the <u>A.H. Fischer</u> court noted:

> [a] suit at law is not a children's game, but a
> serious effort on the part of adult human beings
> to administer justice; and the purpose of process
> is to bring parties into court.  If it names them
> in such terms that every intelligent person
> understands who is meant, as is the case here, it
> has fulfilled its purpose; and courts should not
> put themselves in the position of failing to
> recognize what is apparent to everyone else.

<u>A.H. Fischer</u>, 162 F. 2d at 873.

Despite this well-established rule, Defendant corporations

argue that they were improperly named because "Co., L.L.C." and

"Co., Inc." were omitted from two of the Defendants' names.  The

court in <u>A. H. Fischer</u> described the abbreviation "Inc." as "merely

descriptive of the Defendant being a corporation."  <u>Id.</u>  The error

here, however, is less egregious than the mistake in <u>A. H. Fischer</u>

in which the entire word "Lumber" was included in addition to

"Inc."  <u>Id.</u>  Therefore, Defendant corporations' argument in this

case lacks merit.

Moreover, there was no confusion here as to which Defendant

was being named because it would be unreasonable to assume that the

omission of "Co., Inc." and "Co., L.L.C." led to confusion about

the identity of the intended Defendant corporations.  <u>See</u> <u>Morrel</u>,

188 F.3d at 224.  That this was harmless error is best evidenced by

the fact that Defendants understood themselves to be the intended parties and because they answered the Complaint through communications from their attorney.[5] Therefore, the minor misnomer in naming Defendant corporations is not a fatal defect and default should not be vacated.

*                    *                    *

Having failed to demonstrate the service was invalid, Defendants have failed to satisfy the <u>per se</u> test for setting aside the entry of default. Additionally, Defendants' motion to dismiss the Complaint due to insufficiency of service of process and failure to establish personal jurisdiction must also be denied.


**B.  Good Cause**

Defendants may still set aside the entry of default if the equities balance in their favor under the three-prong good cause standard, i.e., (a) the level of willfulness involved in the entry of default, (b) prejudice to Plaintiffs, and (c) the existence of a meritorious defense. Each prong will be addressed in turn.

---

[5]Defendants themselves may have contributed to this harmless error. In the Paul Norris letter of Oct. 25, 2002 (sent before the complaint was filed), Paul Norris identified himself as counsel for "Central Jersey Excavating, Richard A. Pulaski Construction Company, Inc., and Pulaski Construction Company," which incorrectly identifies Central Jersey Excavating Co., L.L.C. and Pulaski Construction, Co., Inc. Oct 25 Letter from Paul Norris, Pls.' Exh. 1.

### 1. Willfulness

The district courts of the District of Columbia have held that the "boundary of willfulness lies somewhere between a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." Int'l Painters, 288 F. Supp. 2d at 26, (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F. 3d 631, 635 (2d Cir. 1998). A finding of bad faith is not necessary to conclude that the defendant acted willfully. Capital Yacht Club v. Vessel Aviva, 228 F.R.D. 389, 393 (D.D.C. 2005). Significantly, courts have held that default is willful when a defendant fails to meet an informal deadline after which plaintiffs specifically threatened to file for default. See Int'l Painters, 288 F. Supp. 2d at 27.

In this case, it is uncontested that on March 12, 2003, Plaintiffs sent Defendant corporations a letter specifically threatening that Plaintiffs would move for an entry of default if they received no response by March 19. Mar. 12 Letter from Mitzner to Norris, Pls.' Exh. 7. Plaintiffs' counsel acquiesced to Defendants' attempts to find local counsel until April 9, 2003, when they finally moved for entry of default. See also Draisner v. Liss Realty Co., 211 F. 2d. 808 (D.C. 1954) (plaintiff demonstrated a willingness to extend time, and provided defendant's attorney notification that unless an answer was provided soon, that plaintiff would move for an entry of default). Because Plaintiffs

consented to prolonging the response time for filing an answer and had given the Defendants advance warning, Plaintiffs have sufficiently demonstrated that the default was willful.

This finding is bolstered by the fact that the Defendants have failed to provide any excuse as to why they failed to respond to Plaintiffs' Complaint for six months.  Although it is true that Defendants were engaged in settlement negotiations during that period of time, this court has previously held that when a defendant relies "on the mere existence of settlement negotiations as an excuse for failing to fulfill its responsibilities to the Court," the defendant fails to protect its own interests in the litigation.  Int'l Painters, 288 F. Supp 2d at 26.  Defendants in such situations have no basis to not file an answer, especially when they have been advised as to a particular deadline.  Id. at 27.  Here, Defendants have not even provided settlement negotiations as their excuse.

The only explanation provided by Defendants is that the Defendant "was not familiar with any local counsel in the Washington D.C. metro area and did not have an opportunity to retain local counsel in time to file a responsive pleading." Defs.' Mot. at ¶ 10.  Six months is an inordinate period of time to decide to and subsequently try to obtain local counsel.  Failure to obtain counsel, in and of itself, does not excuse the Defendants from failing to file a answer.  See, e.g., Whittaker v. District of

Columbia, 228 F.R.D. 378, 380 (D.D.C. 2005) (defendant's inability to obtain counsel due to lack of funds despite a third party's offer to pay attorney's fees at a rate of $200 an hour was "simply not credible").[6]   Additionally, during this period of time, Defendants _had_ counsel, who was presumably requesting extended periods of time to answer at his clients' request.   Norris Extension Letter, Pls.' Exh. 8.  Defendants only filed papers with the Court after the default was entered against them when they submitted a Motion to Vacate Order of Default and Motion to Dismiss.[7]

Therefore, because Defendant corporations were on notice of the Plaintiffs impending lawsuit, had been specifically warned of Plaintiffs' intention to move for entry of default, and have not

---

[6]The Court also notes, that Defendants have been without any counsel since December 9, 2003.

[7]The Court entered default on May 8, 2003.  Defendants' Motion was filed on May 22, 2003, accompanied by a Memorandum of Points and Authorities and an Affidavit and Verified Answer from both Richard A. Pulaski and Ronald Pulaski.  Per Local Civil Rule 7(g) a "motion to vacate an entry of default shall be accompanied by a verified answer sufficient to bar the claim in whole or in part." The Verified Answers provided do not satisfy this standard, except to allude to an insufficient service of process.  Defendants do supply the Memorandum of Points and Authorities, which, while it does not provide an answer to all of the points in Plaintiffs' Complaint, does seek to bar the claim.  Although Defendants have themselves not complied with the technicalities of the Local Rules, while expecting compliance from the Plaintiffs, the Court will not insist on strict compliance with  LCvR 7(g) here.  See Owens v. Rep. of Sudan, 374 F. Supp. 2d 1, 8-9 (D.D.C. 2005) ("this Court is unaware of any decision in which a court has struck a motion to dismiss following an entry of default because the motion to vacate the default was filed without an answer.").

proffered an adequate excuse for their failure to answer – default
was willful.


   **2. Prejudice to Plaintiffs**

   Courts refuse to set aside default judgments when plaintiffs
would be substantially prejudiced. See Whelan v. Abell, 48 F.3d
1247, 1258-60 (D.C. Cir. 1995).  Plaintiffs claim prejudice here
based on the delay in receiving recovery and the expense of
litigation.  However, neither claim is sufficient to demonstrate
prejudice.  As the court held in Capital Yacht, 228 F.R.D. at 394,
 "delay and legal costs are part and parcel of litigation and
typically do not constitute prejudice for the purposes of Rule
55(c)."  See also Quaker Valley School Dist. v. Employers Mut.
Liab. Ins. Co. of Wis., 96 F.R.D. 423 (E.D. Penn. 1983) ("the
financial costs inherent in setting aside a default and the
concomitant delay in realizing satisfaction on a claim rarely
establish the requisite degree of prejudice."); Davis v. Musler,
713 F.2d 907, 912 (2d Cir. 1982); see also 10A WRIGHT & MILLER, FEDERAL
PRACTICE AND PROCEDURE § 2699 (3d ed. 1998).  This is a sound
conclusion because every time a court sets aside an entry of
default the plaintiff necessarily incurs the cost of litigating the
issue and the delay incumbent therein.  Therefore, to allow garden
variety delays and legal costs to satisfy the prejudice prong of
the good-cause test would effectively eviscerate its purpose.

Because Plaintiffs have not alleged any particular prejudice that would result were the court to set aside the entry of default, Plaintiffs have failed to demonstrate any prejudice here.

Nevertheless, this is not conclusive of the matter because "absence of prejudice to the plaintiff does not _per se_ entitle defendant to relief from the judgment." Capital Yacht, 228 F.R.D. at 394 (citing SEC v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998)); Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 265 (4th Cir. 1993). Rather, the Court must factor the lack of prejudice into its overall balancing of the equities.


### 3. Meritorious Defense

Defendants are not required to prove a defense when moving to set aside a default judgment, but rather must make allegations that contain a legally sound suggestion which, if proven at trial, would constitute a complete defense. See Int'l Painters, 288 F. Supp. 2d at 28. Defendants' defense is based on two contentions: (1) that the statute of limitations has run, and (2) that the named Defendants are not alter egos of one another. Each defense will be addressed in turn.


### (a) Statute of Limitations:

Defendants assert that the statute of limitations has run

barring Plaintiffs' suit because the injury occurred three years prior to commencement of the action.   In determining the statute of limitations for ERISA claims, while courts borrow from state law the duration of the limitations, "they determine the time at which the federal claim accrued - the moment at which the limitations period began to run - by consulting federal law."   Connors v. Hallmark & Son Coal Co.,  935 F.2d 336, 341 (D.C. Cir. 1991).   In this case, while both parties agree, as they must, that as a matter of state law there is a three year statute of limitations, In re UMWA Employee Benefit Plans Litig., 854 F. Supp. 914, 916 n.3 (D.D.C. 1994), they disagree on when the limitations period accrues.

    Defendants assert that the limitation period accrues only when the injury occurred by referencing state law.  However, as directed by Connors, the accrual period is determined as a matter of federal common law.  Connors, 935 F. 2d at 341.  In this case, the accrual period begins to run based on the injury discovery rule.  Id. Under the injury discovery rule, the claim accrues when the Plaintiffs discovered, or "with due diligence should have discovered the injury."  Connors, 935 F.2d at 342 (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990)).  As a result of misquoting the rule, Defendants have not alleged that the Plaintiffs should have discovered the injury prior to the audit conducted in 2002.   Therefore, Defendants do not present a

meritorious defense.


   **(b) Alter Egos**

   Defendants also assert that they are not alter egos of one another and, therefore, should not be jointly liable.   More specifically, Central Jersey Excavating Company, L.L.C., and Richard A. Pulaski Construction Co., Inc., claim that only Pulaski Construction Company is a signatory to the collective bargaining agreement and, therefore, the claims against them should be dismissed.   This defense would only counsel for setting aside the entry of default as against Central Jersey Excavating Company, L.L.C., and Richard A. Pulaski Construction Co., Inc.

   As an initial question, the Court must determine whether federal common law or state law applies in deciding whether the parties are alter egos.   The Supreme Court has maintained that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'"   Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56 (1987)); see also Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo, 35 F.3d 29, 36-37 (2d Cir. 1994).   However, courts have long been reluctant to displace corporate formalities determined by state laws.   But that question need not be addressed because "federal common law draws upon state law for guidance, . . . the choice between state and federal

[veil-piercing law] may in many cases present questions of academic interest, but little practical significance." In re Acushnet River & New Bedford Harbor Proceedings, 675 F. Supp. 22, 33 (D. Mass. 1987).

Plaintiffs have a strong burden to overcome in demonstrating that the companies are alter egos.   See Dole Food Co. v. Patrickson, 538 U.S. 468, 476 (2003).   In assessing whether two parties are alter egos, courts principally consider the: "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus -- i.e., 'whether the alleged alter ego entity was created and maintained in order to avoid labor obligations.'"  Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp., 139 F.3d 304, 308 (1st Cir. 1998) (quoting NLRB v. Hospital San Rafael, 42 F.3d 45, 50 (1st Cir. 1994)).   Here, Defendants have asserted, and supported through affidavits, that (1) the entities have different Employer Tax Identification numbers; and (2) maintain different corporate directors, officers, and stockholders.  Given that "Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense," Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980) (citing Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1969) and Tozer v. Charles A. Krause Milling

Co., 189 F.2d 242, 244 (3d Cir. 1951)), this is sufficient to create a potentially meritorious defense.

This defense, however, only applies to Central Jersey Excavating Company, L.L.C., and Richard A. Pulaski Construction Co., Inc., and therefore, Pulaski Construction Co., Inc. cannot avail itself of this defense.

## 4. Balancing the equities

In this case, in light of the fact that the Defendants' actions were willful, but two of the Defendants may have a meritorious defense and that the Plaintiffs will not be prejudiced by setting aside the entry of default with regard to these two Defendants, granting Defendants' motion is proper as to Central Jersey Excavating Co., L.L.C., and Richard A. Pulaski Construction Co., Inc. However, the equities weigh in favor of maintaining the entry of default as against Pulaski Construction Co., Inc. Pulaski Construction Co., Inc. has failed to allege any reason why it failed to timely answer the Complaint and has failed to allege any meritorious defense. Accordingly, the entry of default is sustained as against Pulaski Construction Co., Inc., but is vacated with regard to Central Jersey Excavating Co., L.L.C. and Richard A. Pulaski Construction Co., Inc.

### III.  Motion to Dismiss under 12(b)(6)

Defendants advance three bases as to why Plaintiffs' Complaint should be dismissed under 12(b)(6).  First, that the Complaint is barred by the statute of limitations.  Second,  that Defendant companies Central Jersey Excavating Co., L.L.C. and Richard A. Pulaski Construction, Co., Inc. were not parties to the collective bargaining agreement and therefore cannot be liable under said agreement.  Finally, Defendants argue that Plaintiffs do not have standing to bring this claim.[8]

The Court addressed the statute of limitations argument above, and the same analysis applies here, insofar as the statute of limitations does not bar the Plaintiffs' claim.  However, the alter ego analysis leads to a different result under a motion to dismiss, as in this instance, the Court must accept all of Plaintiffs' allegations as true.  Under Plaintiffs' Complaint, they have alleged that the three companies are alter egos of one another. Although, as noted above, Plaintiffs have a strong burden to overcome, it is not an insurmountable burden, and, were it met, it

---

[8]However,  why  Defendants  assert  the  latter  defense  is uncertain.  It is unclear as to whether they assert it as part of a 12(b)(1) or 12(b)(6) motion, or as part of their argument to vacate  the  entry  of  default.   Nevertheless,  accepting  all  of Plaintiffs' allegations as true, Plaintiffs have pled sufficient facts  to  establish  standing.   Plaintiffs  have  alleged  that Defendants, pursuant to the collective bargaining agreement, agreed to make payments to, _inter alia_, the International Pension Fund ("IPF"), who are third-party beneficiaries under the agreement. Plaintiffs are Trustees of, and sue on behalf of, the IPF.  Comp. at ¶ 3.

would establish liability for the two non-parties to the agreement.

Therefore, construing all alleged facts and reasonable inferences

therefrom as true, Plaintiffs have alleged a claim, that if true,

would attach liability to all three companies.[9]

---

[9]This Court has previously grounded liability for contributions to ERISA for the Bricklayers and Trowel Trades International Pension Fund based on an alter ego analysis.  See, e.g. Flynn v. Ohio Bldg Restoration, Inc., 317 F. Supp. 2d 22, 28-35 (D.D.C. 2004) (stating that the alter ego doctrine "also applies to situations where the companies are parallel operations," (internal citations omitted)  and finding, on a motion for summary judgment, that the companies were alter egos of one another due to similarity of operations, overlap of employees, management and the maintenance of offices in the same location); Flynn v. R.C. Tile, 53 F. 3d 953, 959 (D.C. Cir. 2004) (Affirming the District Court's grant of summary judgment to plaintiffs based on an alter ego analysis, finding no significant differences between two family-owned companies and therefore finding liability for pension obligations under the collective bargaining agreement).

**CONCLUSION**

For these reasons, default is set aside for Central Jersey Excavating Co., L.L.C., and Richard A. Pulaski Construction Co., Inc.  However, the Court sustains the entry of default as against Pulaski Construction Co., Inc.  Furthermore, Defendants' motion to dismiss is denied.  Pursuant to Fed. R. Civ. P. Rule 16, parties should meet and confer and file a scheduling order with the court.


    /s/ Donald C. Pogue
DONALD C. POGUE
UNITED STATES DISTRICT JUDGE[10]


January 6, 2006
New York, NY

---

[10]The Honorable Donald C. Pogue, Judge for the United States Court of International Trade, sitting by designation.